IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 4:19-cv-00073 |
| MARK TONY BAKER, SR. d/b/a MARK BAKER TAX and TAXES BY MARK; and | |
| BROOK JAMES ASKEW d/b/a BROOK TAX MAN, | |
| Defendants. | |

## UNITED STATES' COMPLAINT FOR PERMANENT INJUNCTION

Plaintiff, the United States of America, alleges as follows:

1.       This is a civil action brought by the United States under 26 U.S.C. §§ 7402, 7407, and 7408 to enjoin Mark Tony Baker, Sr. ("Baker"), doing business as Mark Baker Tax ("MBT") and Taxes by Mark ("TBM"), and Brook James Askew ("Askew"), doing business as Brook Tax Man ("BTM"), (collectively "the Defendants"), any entity through which Baker or Askew conduct business, and all persons and entities in active concert or participation with them, from:

    a.  Acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;

    b.  Owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

17265927.1

    c. Maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

    d. Engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code;

    e. Training, advising, counselling, instructing, or teaching anyone about the preparation of federal tax returns;

    f. Appearing as a representative on behalf of any person or entity before the IRS; and

    g. Engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

### Authorization

2.    This action has been requested by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General, pursuant to I.R.C. §§ 7402, 7407, and 7408.

### Jurisdiction and Venue

3.    Jurisdiction is conferred on the Court by 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. § 7402(a).

4.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 26 U.S.C. §§ 7407 and 7408 because the Defendants reside in this district and a substantial part of the actions giving rise to this suit took place in this district.

### Background

### Mark Baker

5.    Mark Baker is a tax return preparer doing business under the names Mark Baker Tax and Taxes by Mark since at least 2014.  Baker prepares tax returns at 4649 Farlin Avenue, Apartment A, St. Louis, Missouri 63115.

2

6.     At all times mentioned in this complaint, Baker resided and currently resides in St. Louis, Missouri.

7.     Baker prepares and files returns for customers in St. Louis, Missouri.

8.     Baker is 57 years old and a high school graduate.  Baker attended the University of Missouri – Columbia for two years.

9.     Baker prepared income tax returns through a recognized national tax preparation firm from 1993 until 2003.

10.     On October 30, 2012, Baker obtained a Preparer Tax Identification Number ("PTIN") from the IRS.  The IRS requires PTINs for anyone who prepares or assists in preparing federal tax returns for compensation.  On December 31, 2013, Baker's PTIN expired.  He did not renew it.

11.     On November 26, 2012, Baker applied for an Electronic Filing Identification Number ("EFIN") from the IRS.  The IRS requires EFINs for any business that files 11 or more federal tax returns electronically during a calendar year.  On February 11, 2013, the IRS denied Baker's EFIN renewal request.

### Brook Askew

12.     Brook Askew is a tax return preparer doing business under the name Brook Tax Man since at least 2014.  Askew prepares tax returns at 4649 Farlin Avenue, Apartment A, St. Louis, Missouri 63115 and his residence at 1207 Astoria Drive, St. Louis, Missouri 63137.

13.     At all times mentioned in this complaint, Askew resided and currently resides in St. Louis, Missouri.

14.     Askew prepares and files returns for customers in St. Louis, Missouri.

3

17265927.1

15.     Askew is 36 years old and received a Bachelor of Business Administration from Harris-Stowe University.  Although they are not related, Baker has introduced Askew to clients as Baker's nephew or son.

16.     Askew took general accounting courses at college but has no formal training for income tax return preparation.

17.     Askew did not obtain an EFIN or PTIN from the IRS.

**Return Preparer Activity**

18.     The Defendants are tax return preparers as defined by 26 U.S.C. § 7701(a)(36). They have prepared other people's Forms 1040 (U.S. Individual Income Tax Return) for compensation at least between 2014 and the present.

19.     The Defendants charge from $50 to $300 per return to prepare individual returns for customers.

20.     The Defendants operate their preparation businesses as "ghost preparers."  They do not sign the tax returns they are paid to prepare and do not identify themselves on returns at all, let alone with PTINs or EFINs.

21.     Because the Defendants operate as ghost preparers, it is difficult for the IRS to identify and detect their illicit tax preparation activities.  Once detected, it is difficult to quantify how many tax returns they have prepared and filed for their customers.

22.     An IP address is a unique numerical label assigned to each device connected to a computer network.  For tax years 2014, 2015, and 2016, the Defendants, using an online tax return filing service, electronically filed income tax returns for customers using IP addresses XX.XX.108.64 and XX.XX.232.74.  For tax year 2016, Askew also electronically filed income tax returns for customers using IP addresses XX.XX.11.81 and XXX.XXX.45.176.  For tax year

4

2017, Askew electronically filed income tax returns for customers using IP address XX.XX.38.161.  For tax year 2017, Baker filed returns via mail or instructed customers how to file their returns via mail.

23.      Based on an analysis of the known IP addresses and email addresses used by the Defendants, the IRS estimates that Baker filed at least 659 returns in 2015.  The IRS estimates that Askew filed at least 238 income tax returns and Baker at least 450 income tax returns in 2016.  The IRS estimates that Askew filed at least 225 income tax returns and Baker at least 103 income tax returns in 2017.  The Defendants' unlawful ghost preparation practices continued after the IRS began investigating the Defendants' tax preparation activities and after each of the Defendants had been contacted by the IRS.

### The Defendants' Unlawful Tax Return Preparation Practices

24.      Since at least 2014, the Defendants have prepared numerous false federal income tax returns to understate their customers' true tax liabilities and/or obtain significant refunds for their customers, at the expense of the United States Treasury.

25.      The Defendants prepare, for paying customers, federal income tax returns (IRS Form 1040) typically containing fabricated Schedule C (Profit or Loss from Business – Sole Proprietorship) losses; false Schedule A (Itemized Deductions) items, including fabricated deductions for charitable contributions and unreimbursed employee expenses; fraudulent claims for the Earned Income Tax Credit ("EITC"); and/or false American Opportunity Tax Credits ("AOTC").

### Fabricated Schedule C Business Income and Expenses

26.      Individual taxpayers who operate a business as a sole proprietorship must report the business' income and expenses on a Schedule C that is filed as part of the taxpayer's Form

5

1040.  The net figure reported on a Schedule C, whether a profit or a loss, is a component of the taxpayer's adjusted gross income (along with any wage income, interest income, etc.).

27.     The Defendants continually and repeatedly prepare federal income tax returns reporting non-existent businesses on bogus Forms Schedule C.  The Defendants fabricate income and expenses for legitimate businesses to create fictitious losses.  By fabricating businesses and losses, the Defendants understate the customers' taxable income and thus reduce the amount of tax owed to the IRS and/or generate false refunds.

**False Schedule A Deductions**

28.     The Defendants repeatedly falsify itemized deductions, specifically, fictitious charitable contributions and unreimbursed employee business expenses, on customers' Schedules A.

29.     A charitable contribution is a voluntary donation or gift to, or for the use of, a qualified organization made without getting, or expecting to get, anything of equal value.

30.     Taxpayers generally may deduct unreimbursed employee expenses that are: (1) paid or incurred during the tax year; (2) for carrying on the taxpayer's trade or business of being an employee; and (3) ordinary and necessary.  Expenses are ordinary when they are common and accepted in a given trade, business, or profession.  Expenses are necessary when they are appropriate and helpful to a business.

31.     The Defendants continually and repeatedly prepare federal income tax returns that include bogus Schedule A deductions for customers.  By claiming deductions to which customers are not entitled, the Defendants fraudulently decrease the amount of customers' taxable income reported on their tax returns.

17265927.1

**Earned Income Tax Credit Fraud**

32.    The Defendants prepare tax returns that include fraudulent claims for the EITC often based on fabricated business income and expenses, bogus or improperly-claimed dependents, and/or false filing status.

33.    The EITC is a refundable tax credit available to certain low-income working people.  The amount of the credit is based on the taxpayer's income, claimed number of dependents, and filing status.  Because the EITC is a refundable credit, claiming an EITC can, in certain circumstances where the value of the credit exceeds the taxpayer's liability, entitle the taxpayer to a payment from the U.S. Treasury.

34.    Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents and, for certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower earned income.  For individuals with single, head of household, and qualifying widower filing status, the amount of the credit increases as income increases between $1 and $14,050, and decreases as income increases beyond $18,350.  For individuals with married filing jointly filing status, the amount of the credit increases as income increases between $1 and $14,050, and decreases as income increases beyond $23,950.  For tax year 2017, the maximum EITC was $6,318 and was available to eligible individuals with three dependent children who earned between $14,000 and $23,950.  Some tax preparers who manipulate reported income to maximize the EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet spot" or "golden range."

35.    Because of the way the EITC is calculated, reporting more income, up to a certain point, allows customers to receive a larger refundable credit.  Similarly, claiming losses to offset higher income to decrease the total reported income and to fall within the "sweet spot" allows

7

customers to claim a larger refundable credit.

36. Defendants falsify information to claim the maximum EITC for customers. For example, to bring the customer's reported earned income within the "sweet spot" for the EITC, and depending on a customer's actual income, Defendants inflate or fabricate business income reported on a Form Schedule C in order to fraudulently increase customers' reported earned income, or claim bogus Schedule C expenses to fraudulently decrease customers' reported earned income.

**False American Opportunity Tax Credits**

37. The Defendants report false education expenses and falsely claim the AOTC on customers' tax returns. The AOTC is a credit for qualified education expenses paid for an eligible student for the first four years of higher education. The maximum annual credit is $2,500 per eligible student, and, if the credit brings the amount of tax owed to zero, taxpayers may be entitled to a payment of up to $1,000 from the government.

38. By claiming AOTCs for customers who did not actually attend college during the tax year at issue (if ever) and had no qualifying education expenses, the Defendants unlawfully reduced their customers' tax liabilities and generated larger refunds.

**Customer Examples**

<u>**Customer 1**</u>

39. Although Askew is not listed as the paid preparer, he prepared and filed a 2017 income tax return for Customer 1 ("C1").

40. Askew charged C1 $100 to prepare his 2017 return.

41. Askew reported wages of $29,887 on line 7 of C1's 2017 tax return. On the Schedule C attached to C1's 2017 tax return, Askew falsely claimed that C1 owned or operated a

8

"car repair" business that incurred a $2,500 loss – with $0 gross income and $2,500 in claimed expenses for supplies – in 2017.  Although C1 "makes a lot of money" working on cars, C1 did not spend $2,500 in supplies in 2017 on a car repair business.  Askew did not ask C1 if he spent $2,500 in supplies.  By reporting this fabricated loss, Askew reduced C1's total income, which resulted in an inflated EITC, allowing Askew to claim a bogus 2017 refund of $4,642 for C1.

42.     Askew did not sign C1's 2017 tax return.

**Customer 2**

43.     Although Askew is not listed as the paid preparer, he prepared and filed 2015, 2016, and 2017 income tax returns for Customer 2 ("C2").

44.     Askew charged C2 $100 to prepare her 2017 income tax return.

45.     Askew reported wages of $43,427 on line 7 of C2's 2017 tax return.  On the Schedule C attached to C2's 2017 income tax return, Askew correctly claimed that C2 owned or operated a lawn care business.  Askew claimed that C2's business had only $1,125 in gross income when, in reality, C2's business had approximately $5,760 in income in 2017.  Askew also falsely claimed that C2 had $9,000 in expenses, comprised of $6,500 for "lawn mowers and trimers [sic] back pack" and $2,500 for supplies.  In 2017, C2 only spent approximately $4,000 in expenses for her business.  Askew thus claimed a loss of $7,875 for C2's business when she should have claimed $1,760 in profit.  By reporting this fabricated loss, Askew fraudulently reduced C2's total income, allowing Askew to claim a bogus 2017 refund of $4,437 for C2.

46.     C2 gave Askew Forms W-2 for 2016 showing wages totaling $29,230.  On the Schedule C attached to C2's 2016 tax return, Askew falsely claimed that C2 owned or operated a "home health" business that had a $3,500 loss in 2016.  C2 did not own or operate a home health business in 2016, does not even know what a "home health" business is, and did not tell Askew

9

that she owned or operated such a business or incurred related business expenses.  Askew falsely claimed that C2 had $0 in gross receipts against $3,500 in expenses for supplies.  By reporting this fabricated loss, Askew fraudulently reduced C2's total income, allowing Askew to claim a bogus 2016 refund of $7,079 for C2.

47.     C2 gave Askew a Form W-2 for 2015 showing wages totaling $8,428.  On the Schedule C attached to C2's 2015 tax return, Askew falsely claimed that C2 owned or operated a "home health" business that had a $6,500 profit in 2015.  C2 did not own or operate a home health business in 2015, does not even know what a "home health" business is, and did not tell Askew that she owned or operated such a business or incurred related business expenses.  Askew falsely claimed that C2 had $6,500 in gross receipts against $0 in expenses for supplies.  By reporting this fabricated profit, Askew fraudulently increased C2's total income, which resulted in an increased EITC, allowing Askew to claim a bogus 2015 refund of $6,925 for C2.

48.     Askew did not sign C2's 2015, 2016, or 2017 tax returns.

**Customer 3**

49.     Although Askew is not listed as the paid preparer, he prepared and filed 2015 and 2017 income tax returns for Customer 3 ("C3").

50.     Askew charged C3 between $80 and $100 to prepare each of his 2015 and 2017 income tax returns.

51.     C3 gave Askew a Form W-2 for 2017 showing wages totaling $32,477.  On the Schedule C attached to C3's 2017 tax return, Askew falsely claimed that C3 owned or operated a catering business that had a $2,100 loss in 2017.  C3 did not own a business in 2017 and did not tell Askew that he owned or operated a business or incurred related business expenses.  Askew falsely claimed that C3 had no gross receipts against $2,100 for supplies.  By reporting this

10

fabricated loss, Askew fraudulently reduced C3's total income, allowing Askew to claim a bogus 2017 refund of $1,038 for C3.

52.     C3 gave Askew Forms W-2 for 2015 showing wages totaling $25,768.  On the Schedule C attached to C3's 2015 tax return, Askew falsely claimed that C3 owned or operated a catering business that had a $4,975 loss in 2015.  C3 did not own a business in 2015 and did not tell Askew that he owned or operated a business or incurred related business expenses.  Askew falsely claimed that C3 had $125 in gross receipts against $3,500 in expense deductions for "grill and smokers" and $1,600 for supplies.  By reporting this fabricated loss, Askew fraudulently reduced C3's total income, allowing Askew to claim a bogus 2015 refund of $1,918 for C3.

53.     Askew did not sign C3's 2015 or 2017 tax returns.

**Customer 4**

54.     Although Askew is not listed as the paid preparer, he prepared and filed a 2016 income tax return for Customer 4 ("C4").

55.     Askew charged C4 $200 or $300 to prepare his 2016 income tax return.

56.     On the Schedule C attached to C4's 2016 income tax return, Askew falsely claimed that C4 owned or operated a lawn care business with $125 gross income and $16,000 in claimed expenses for depreciation and supplies.  C4 did not own or operate a lawn care business in 2016 and did not tell Askew that he owned or operated a lawn care business during 2016.  By reporting this fabricated loss, Askew fraudulently reduced C4's total income, which resulted in an inflated EITC, allowing Askew to claim a bogus 2016 refund of $1,732 for C4.

57.     Askew did not sign C4's 2016 tax return.

**Customer 5**

58.     Although Baker is not listed as the paid preparer, he prepared and filed 2015 and

2016 income tax returns for Customer 5 ("C5").

59.     Baker charged C5 $100 to prepare each of his 2015 and 2016 returns.

60.     C5 gave Askew a Form W-2 for 2016 showing wages totaling $45,472.  On the Schedule C attached to C5's 2016 income tax return, Baker falsely claimed that C5 owned or operated a lawn care business with $125 gross income and $19,700 in claimed expenses for depreciation, supplies, and other expenses (cell phone and travel).  C5 told Baker that he "cut grass a few times" and made a small profit, but C5 did not tell Baker that he owned or operated a lawn care business during 2015 or 2016 that lost money.  By reporting the fabricated loss of $19,575, Baker fraudulently reduced C5's total income, allowing Baker to claim a bogus 2016 refund of $273 for C5.

61.     C5 provided a Form W-2 for 2015 showing wages totaling $40,518.  On the Schedule C attached to C5's 2015 income tax return, Baker falsely claimed that C5 owned or operated a lawn care business with $125 gross income and $14,500 in claimed expenses for advertising, contract labor, depreciation, supplies, and other expenses (cell phone).  By reporting the fabricated loss of $14,375, Baker fraudulently reduced C5's total income, allowing Baker to claim a bogus 2015 refund of $1,118 for C5.

62.     Baker did not sign C5's 2015 and 2016 tax returns.

**Customer 6**

63.     Although Askew is not listed at the paid preparer, he prepared 2015 and 2016 income tax returns for Customer 6 ("C6").

64.     Although Baker is not listed as the paid preparer, he prepared a 2014 income tax return for C6.

12

65.     The Defendants charged C6 between $125 and $150 to prepare each of his respective 2014, 2015, and 2016 income tax returns.

66.     For the 2014, 2015, and 2016 returns, C6 presented his tax information to either Baker or Askew and waited for Baker or Askew to complete each respective return.

67.     On the Schedule A attached to C6's 2016 income tax return, Askew falsely claimed that C6 made cash charitable contributions totaling $9,800.  C6 typically donated roughly $500 to charity per year and did not tell Askew he made a charitable contribution of $9,800 for tax year 2016.  Askew fraudulently claimed a $20,288 deduction (over 20% of C6's reported wages of $98,735) for unreimbursed employee expenses on C6's 2016 income tax return.  C6 did not tell Askew he incurred unreimbursed employee expenses for 2016.  By reporting these fabricated deductions, Askew fraudulently reduced C6's total income, allowing Askew to claim a bogus 2016 refund of $5,202 for C6.

68.     On the Schedule A attached to C6's 2015 tax return, Askew falsely claimed that C6 made cash charitable contributions totaling $7,000.  C6 typically donated roughly $500 to charity per year and did not tell Askew he made a charitable contribution of $7,000 for tax year 2015.  Askew fraudulently claimed a $23,250 (over 40% of C6's reported wages of $57,579) deduction for unreimbursed employee expenses on C6's 2015 income tax return.  C6 did not tell Askew he incurred unreimbursed employee expenses for 2015.  By reporting these fabricated deductions, Askew fraudulently reduced C6's total income, allowing Askew to claim a bogus 2015 refund of $2,296 for C6.

69.     On the Schedule A attached to C6's 2014 tax return, Baker falsely claimed that C6 made cash charitable contributions totaling $5,000.  C6 typically donated roughly $500 to charity per year and did not tell Baker he made a charitable contribution of $5,000 for tax year

2014.  Baker fraudulently claimed a $9,028 deduction for unreimbursed employee expenses on C6's 2014 income tax return.  C6 did not tell Baker he incurred unreimbursed employee expenses for 2014.  By reporting these fabricated deductions, Baker fraudulently reduced C6's total income, allowing Baker to claim a bogus 2014 refund of $2,493 for C6.

70.     Askew did not sign C6's 2015 and 2016 tax returns.

71.     Baker did not sign C6's 2014 tax return.

**Customer 7**

72.     Although Baker is not listed as the paid preparer, he prepared and filed income 2013, 2014, 2015, and 2016 income tax returns for Customer 7 ("C7").

73.     Baker charged C7 between $50 and $100 to prepare each of his 2013, 2014, 2015, and 2016 income tax returns.

74.     C7 gave Baker Forms W-2 for 2016 showing wages totaling $76,022.  On the Schedule A attached to C7's 2016 tax return, Baker falsely claimed that C7 made cash charitable contributions totaling $6,500.  C7 did not make and did not tell Baker he made cash charitable contributions during 2016.  Baker falsely claimed that C7 made non-cash charitable contributions totaling $495 during 2016.  Although C7 donated, without itemizing or retaining receipts, roughly $250 worth of items to Goodwill each year, he did not tell Baker he made non-cash charitable contributions during 2016.  By claiming these fabricated deductions, Baker fraudulently reduced C7's total income, allowing Baker to claim a bogus refund 2016 of $5,948 for C7.

75.     C7 gave Baker Forms W-2 for 2015 showing wages totaling $70,254.  On the Schedule A attached to C7's 2015 tax return, Baker falsely claimed that C7 made cash charitable contributions totaling $6,000.  C7 did not make and did not tell Baker he made cash charitable

14

contributions during 2015.   Baker falsely claimed that C7 made non-cash charitable contributions totaling $495 during 2015.  Although C7 donated, without itemizing or retaining receipts, roughly $250 worth of items to Goodwill each year, he did not tell Baker he made non-cash charitable contributions during 2015.  By claiming these fabricated deductions, Baker fraudulently reduced C7's total income, allowing Baker to claim a bogus 2015 refund of $5,230 for C7.

76.     C7 gave Baker Forms W-2 for 2014 showing wages totaling $64,759.  On the Schedule A attached to C7's 2014 tax return, Baker falsely claimed that C7 made cash charitable contributions totaling $3,900.  C7 did not make and did not tell Baker he made cash charitable contributions during 2014.   Baker falsely claimed that C7 made non-cash charitable contributions totaling $495 during 2014.  Although C7 donated, without itemizing or retaining receipts, roughly $250 worth of items to Goodwill each year, he did not tell Baker he made non-cash charitable contributions during 2014.  By claiming these fabricated deductions, Baker fraudulently reduced C7's total income, allowing Baker to claim a bogus 2014 refund of $4,585 for C7.

77.     C7 gave Baker Forms W-2 for 2013 showing wages totaling $52,051.  On the Schedule A attached to C7's 2013 tax return, Baker falsely claimed that C7 made cash charitable contributions totaling $4,800.  C7 did not make and did not tell Baker he made cash charitable contributions during 2013.   Baker falsely claimed that C7 made non-cash charitable contributions totaling $495 during 2013.  Although C7 donated, without itemizing or retaining receipts, roughly $250 worth of items to Goodwill each year, he did not tell Baker he made non-cash charitable contributions during 2013.   By claiming these fabricated deductions, Baker

17265927.1

fraudulently reduced C7's total income, allowing Baker to claim a bogus 2013 refund of $4,494 for C7.

78.      Baker did not sign C7's 2013, 2014, 2015, or 2016 tax returns.

**Customer 8**

79.      Although Askew is not listed as the paid preparer, he prepared and filed 2013, 2014, 2015, and 2016 income tax returns for Customer 8 ("C8").

80.      Askew charged C8 roughly $200 to prepare each of his 2013, 2014, 2015 and 2016 returns.

81.      On the Form 8863 attached to C8's 2014 income tax return, Askew fraudulently claimed an AOTC totaling $2,500, $1,000 of which was refundable, for C8.  On the Form 8863, Askew claimed that C8 attended UMSL (the "University of Missouri-St. Louis").  C8 did not attend UMSL during 2014, and did not tell Askew that he attended UMSL during 2014.  By claiming this fictitious AOTC for C8, Askew fraudulently reduced C8's tax due, allowing Askew to claim a bogus 2014 refund of $2,622 for C8.

82.      On the Form 8863 attached to C8's 2013 income tax return, Askew fraudulently claimed an AOTC totaling $2,065, $1,000 of which was refundable, for C8.  On the Form 8863, Askew claimed that C8 attended UMSL.  C8 did not attend UMSL during 2013, and did not tell Askew that he attended UMSL during 2013.   By claiming this AOTC for C8, Askew fraudulently reduced C8's tax due, allowing Askew to claim a bogus 2013 refund of $2,272 for C8.

83.      Askew did not sign C8's 2013, 2014, 2015, or 2016 tax returns.

**Customer 9**

84.      Although Baker is not listed as the paid preparer, he prepared and filed 2013,

17265927.1

2014, 2015, and 2016 income tax returns for Customer 9 ("C9").

85.     Baker charged C9 between $50 and $75 to prepare each of her 2013, 2014, 2015, and 2016 income tax returns.

86.     C9 gave Baker her 2016 tax information.  On the Schedule A attached to C9's 2016 income tax return, Baker falsely claimed that C9 made cash charitable contributions totaling $5,200.  C9 did not make and did not tell Baker she made this amount of cash charitable contributions during 2016.

87.     On the Schedule C attached to C9's 2016 income tax return, Baker falsely claimed that C9 owned or operated a hair stylist business with $125 gross income and $27,500 in claimed expenses for contract labor, depreciation (of chairs and tools), and other expenses (cell phone, hair shows, and supplies).  C9 did not own or operate and did not tell Baker that she owned or operated a hair stylist business during 2016.  By reporting the fabricated loss of $27,375 and the false Schedule A deductions noted above in paragraph 86, Baker fraudulently reduced C9's total income, allowing Baker to improperly lower C9's income tax due for 2016.

88.     C9 gave Baker her 2015 tax information.  On the Schedule A attached to C9's 2015 income tax return, Baker falsely claimed that C9 made cash charitable contributions totaling $5,700.  C9 did not make and did not tell Baker she made this amount of cash charitable contributions during 2015.

89.     On the Schedule C attached to C9's 2015 income tax return, Baker falsely claimed that C9 owned or operated a catering business with $120 gross income and $27,580 in claimed expenses for depreciation (of grills), supplies, travel, and other expenses (cell phone).  C9 did not own or operate and did not tell Baker that she owned or operated a catering business during 2015.  By reporting the fabricated loss of $27,460 and the false Schedule A deductions

17

noted above in paragraph 88, Baker fraudulently reduced C9's total income, allowing Baker to claim a bogus 2015 refund of $1,516 for C9.

90.    C9 gave Baker her 2014 tax information.  On the Schedule A attached to C9's 2014 income tax return, Baker falsely claimed that C9 made cash charitable contributions totaling $4,900.  C9 did not make and did not tell Baker she made this amount of cash charitable contributions during 2014.

91.    On the Schedule C attached to C9's 2014 income tax return, Baker falsely claimed that C9 owned or operated a catering business with $125 gross income and $40,443 in claimed expenses for depreciation (for refrigerator and freezers), supplies, and other expenses (cell phone and food).  C9 did not own or operate and did not tell Baker that she owned or operated a catering business during 2014.  By reporting the fabricated loss of $40,318 and the false Schedule A deductions noted above in paragraph 90, Baker fraudulently reduced C9's total income, allowing Baker to claim a $319 EITC to which C9 was not entitled and a bogus 2014 refund of $473 for C9.

92.    C9 gave Baker her 2013 tax information.  On the Schedule C attached to C9's 2013 income tax return, Baker falsely claimed that C9 owned or operated a catering business with $420 gross income and $28,170 in claimed expenses for depreciation (of gas grills), travel, and other expenses (cell phone and tools).  C9 did not own or operate and did not tell Baker that she owned or operated a catering business during 2013.  By reporting the fabricated loss of $27,750, Baker fraudulently reduced C9's total income, allowing Baker to claim a $2,652 EITC to which C9 was not entitled and a bogus 2014 refund of $3,652 for C9.

93.    Baker did not sign C9's 2013, 2014, 2015, or 2016 tax returns.

**Customer 10**

94.     Although Baker is not listed as the paid preparer, he prepared and filed 2013, 2014, 2015, and 2016 income tax returns for Customer 10 ("C10").

95.     C10 or C10's wife gave Baker his 2016 tax information.  On the Schedule C attached to C10's 2016 income tax return, Baker falsely claimed that C10 owned or operated a catering business with $125 gross income and $36,945 in claimed expenses for advertising, depreciation (of grills), supplies, and other expenses (cell phone and cook and servers).  C10 did not own or operate and did not tell Baker that he owned or operated a catering business during 2016.  By reporting this fabricated loss of $36,820, Baker fraudulently reduced C10's total income, which resulted in an inflated EITC, allowing Baker to claim a bogus 2016 refund of $4,373 for C10.

96.     C10 or C10's wife gave Baker his 2015 tax information.  On the Schedule A attached to C10's 2015 income tax return, Baker falsely claimed that C10 made cash charitable contributions totaling $5,500.  Although C10 did make weekly cash charitable contributions of roughly $20, he did not make this amount of cash charitable contributions and did not tell Baker he made this amount of cash charitable contributions during 2015.

97.     On the Schedule C attached to C10's 2015 income tax return, Baker falsely claimed that C10 owned or operated a catering business with $420 gross income and $38,180 in claimed expenses for depreciation (of grills), travel, and other expenses (cell phone).  C10 did not own or operate and did not tell Baker that he owned or operated a catering business during 2015.  By reporting the fabricated loss of $37,760 and the false Schedule A deductions noted above in paragraph 96, Baker fraudulently reduced C10's total income, allowing Baker to claim a bogus 2015 refund of $513 for C10.

98.     C10 or C10's wife gave Baker his 2014 tax information.  On the Schedule C attached to C10's 2014 income tax return, Baker falsely claimed that C10 owned or operated a catering business with $920 gross income and $36,283 in claimed expenses for depreciation (of grills), taxes and licenses, and other expenses (cell phone).  C10 did not own or operate and did not tell Baker that he owned or operated a catering business during 2014.  By reporting this fabricated loss of $35,363, Baker fraudulently reduced C10's total income, which resulted in an EITC to which C10 was not entitled, allowing Baker to claim a bogus 2014 refund of $1,287 for C10.

99.     C10 or C10's wife gave Baker his 2013 tax information.  On the Schedule A attached to C10's 2013 income tax return, Baker falsely claimed that C10 made cash charitable contributions totaling $5,900.  Although C10 did make weekly cash charitable contributions of roughly $20, he did not make this amount of cash charitable contributions and did not tell Baker he made this amount of cash charitable contributions during 2013.

100.    On the Form 8863 attached to C10's 2013 income tax return, Baker fraudulently claimed an AOTC totaling $2,500, $1,000 of which was refundable, for C10.  On the Form 8863, Baker claimed that C10 attended UMSL.  C10 did not complete high school, did not attend UMSL during 2013, and did not tell Baker that he attended UMSL during 2013.

101.    On the Schedule C attached to C10's 2013 income tax return, Baker falsely claimed that C10 owned or operated a catering business with $620 gross income and $30,750 in claimed expenses for depreciation (of grills) and other expenses (cell phone).  C10 did not own or operate and did not tell Baker that he owned or operated a catering business during 2013.  By reporting this fabricated loss of $30,130, the false Schedule A deductions noted above in

20

paragraph 99, and the fictitious AOTC noted above in paragraph 100, Baker fraudulently reduced C10's total income, allowing Baker to claim a bogus 2013 refund of $837 for C10.

102.    Baker did not sign C10's 2013, 2014, 2015, or 2016 tax returns.

### Harm Caused by Defendants

103.    The Defendants' preparation of tax returns making incompetent, negligent, reckless, and/or fraudulent claims harms the public and the United States Treasury.  These practices harm the public because the Defendants prepare false or fraudulent tax returns that understate customers' correct income tax liabilities and illegally cause customers to incorrectly report their federal tax liabilities and underpay their taxes.

104.    The Defendants' return preparation practices harm the United States Treasury by causing lost tax revenue.

105.    The Defendants harm their customers by charging fees for the preparation of accurate tax returns but instead prepare tax returns with fabricated or exaggerated items that understate customers' tax liabilities and claim refunds to which the customers are not entitled.  In doing so, the Defendants cause their customers to incorrectly report their federal tax liabilities and underpay their taxes.

106.    The Defendants' unlawful practices further harm the United States because the IRS must devote its resources to investigating their activities.  The IRS expends time and resources to ascertain the Defendants' customers' correct tax liabilities, recover any refunds erroneously issued, and collect any additional taxes and penalties.  Consequently, and in no small part due to the nature of the Defendants' "ghost preparation" of tax returns, identifying and recovering all lost tax revenues resulting from the Defendants' activities may be impossible.

107.    The Defendants' illegal conduct also harms honest tax return preparers because,

21

by preparing tax returns that unlawfully inflate their customers' refunds, the Defendants gain an unfair competitive advantage over tax return preparers who prepare returns in accordance with the law.  Customers who are satisfied with the tax refunds that they receive but are often unaware of the Defendants' illegal return preparation practices return to the Defendants for subsequent tax seasons.

108.    The Defendants' misconduct harms the public at large by undermining public confidence in the federal tax system and encouraging widespread violations of the internal revenue laws.

109.    The harm to the government and the public will continue unless the Defendants are enjoined.  The Defendants have continued to prepare false returns after contact from and warnings by the IRS.  Without an injunction, the Defendants are likely to continue preparing false and fraudulent federal income tax returns for customers.  An injunction will serve the public interest because it will prevent the Defendants from any further illegal conduct and the harm that it would cause the United States and its citizens.

## COUNT I – Injunction under 26 U.S.C. § 7407

110.    Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from engaging in conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695.  Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct, and the court further finds that a narrower injunction (i.e., prohibiting only that specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from further acting as a tax return preparer.  The prohibited conduct justifying an injunction includes, among other things, the following:

22

a. Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a return preparer who prepares a return or claim for refund that contains an unreasonable position and the return preparer knew (or reasonably should have known) of the position;

b. Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which among other conduct, penalizes a return preparer who recklessly or intentionally disregards IRS rules or regulations;

c. Engaging in conduct subject to penalty under 26 U.S.C. § 6695(b), which penalizes return preparers for failing to sign the returns they prepare for customers;

d. Engaging in conduct subject to penalty under 26 U.S.C. § 6695(c), which penalizes return preparers for failing to furnish a PTIN on the return(s) they prepare for customers;

e. Engaging in conduct subject to penalty under 26 U.S.C. § 6695(g), which penalizes return preparers for failure to comply with EITC and AOTC due diligence requirements.  The Treasury regulations promulgated under 26 U.S.C. § 6695(g) prohibit a tax return preparer from claiming the EITC or AOTC without first conducting proper due diligence and documenting his or her compliance with the due diligence requirements. *See* 26 C.F.R. § 1.6695-2;

f. Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

111. The Defendants, as shown above in paragraphs 5 through 109, are tax return preparers who repeatedly and continually prepare or submit returns or portions of returns that contain unreasonable or wholly fabricated positions and substantially understate the liability for tax on the return.   Accordingly, the Defendants knew (or should have known) of the unreasonable, unrealistic, frivolous, and fraudulent positions.

112. The Defendants continually and repeatedly engage in conduct subject to penalty under 26 U.S.C. § 6694 by preparing federal tax returns that understate their customers' liabilities based on unrealistic, frivolous and reckless positions.  The Defendants, through the actions described above, recklessly or intentionally disregard IRS rules or regulations.

113. The Defendants' willingness to falsify information to obtain the EITC for their

23

customers shows a reckless and/or intentional disregard of IRS rules and regulations.

114.    The Defendants' continual and repeated violations of 26 U.S.C. §§ 6694 and 6695 fall within 26 U.S.C. § 7407(b)(1)(A), and thus are subject to an injunction under 26 U.S.C. § 7407.

115.    The Defendants' continual and repeated fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws falls within 26 U.S.C. § 7407(b)(1)(D), and thus is subject to an injunction under 26 U.S.C. § 7407.

116.    If the Defendants are not enjoined from all tax preparation, they are likely to continue to prepare and file false and fraudulent tax returns.

117.    The Defendants' continual and repeated conduct subject to an injunction under 26 U.S.C. § 7407, including their continual and repeated fabrication of income, expenses and deductions, is so flagrantly illegal and so egregious that it demonstrates that a narrow injunction prohibiting only specific conduct would be insufficient to prevent the Defendants' interference with the proper administration of the internal revenue laws.  Accordingly, the Defendants should be permanently barred from acting as federal tax return preparers, and from owning, operating, managing, investing in, controlling, licensing, franchising, or working for a tax return preparation business.

### COUNT II – Injunction under 26 U.S.C. § 7408

118.    Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

119.    Section 6701(a) of the Internal Revenue Code penalizes any person who aids or assists in, procures, or advises with respect to the preparation or presentation of a federal tax

17265927.1

return, refund claim, or other document knowing (or having reason to believe) that it will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it will result in an understatement of another person's tax liability.   Under 26 U.S.C. § 6701(c)(1), the term "procures" includes "ordering (or otherwise causing) a subordinate to do an act," as well as "knowing of, and not attempting to prevent, participation by a subordinate in an act."

120.    The Defendants, through the actions detailed above in paragraphs 5 through 109, assist and/or advise with respect to the presentation and preparation of federal tax returns for customers that they know will understate their correct tax liabilities, because the Defendants knowingly prepare, assist, and/or advise with respect to the presentation and preparation of returns claiming bogus income, expenses, and deductions.  The Defendants procure and assist the preparation of false and fraudulent tax returns by filing and encouraging the filing of tax returns they know are false or fraudulent.  The Defendants have thus engaged in conduct subject to a penalty under 26 U.S.C. § 6701.

121.    The Defendants are likely to continue violating the law absent an injunction.  To maximize the income they earn from illicit tax return preparation, the Defendants prepare returns with false claims.  That conduct, in turn, gives the Defendants a competitive edge over law-abiding preparers.  It also provides a means for the Defendants to further exploit their customers by charging them fees, while the Defendants' fraud simultaneously and callously exposes their customers to possible civil and criminal liability.

122.    If the Court does not enjoin the Defendants, they are likely to continue to engage in conduct subject to penalty under 26 U.S.C. § 6701.  The preparation of tax returns claiming improper income, expenses, and deductions by the Defendants, and those acting in concert with

25

them, is widespread over many customers and tax years.   Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

## COUNT III – Injunction under 26 U.S.C. § 7402

123.   Section 7402 of the Internal Revenue Code authorizes a district court to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws.

124.   The Defendants have engaged in conduct that substantially interferes with the enforcement of the internal revenue laws through the actions described above in paragraphs 5 through 109, including, but not limited to, preparing tax returns that negligently, recklessly, and/or fraudulently understate customers' tax liabilities and charging fees for the preparation of federal tax returns that understate customers' tax liabilities.

125.   Unless enjoined, the Defendants are likely to continue to engage in such improper conduct and interfere with the enforcement of the internal revenue laws.   If the Defendants are not enjoined from engaging in fraudulent and deceptive conduct, the United States will suffer irreparable injury by providing federal income tax refunds to individuals not entitled to receive them.

126.   While the United States will suffer irreparable injury if the Defendants are not enjoined, the Defendants will not be harmed by being compelled to obey the law.

127.   Enjoining the Defendants is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop the Defendants' illegal conduct and the harm it causes the United States and the Defendants' customers.

128.   The Court should impose injunctive relief under 26 U.S.C. § 7402(a).

## Relief Sought

WHEREFORE, the United States of America requests the following relief:

26

A.      That the Court find that the Defendants have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, continually and repeatedly engaged in other fraudulent or deceptive conduct that substantially interferes with the administration of the tax laws, and that a narrower injunction prohibiting only this specific misconduct would be insufficient;

B.      That the Court, pursuant to 26 U.S.C. § 7407, enter a permanent injunction prohibiting the Defendants from acting as federal tax return preparers;

C.      That the Court find that the Defendants have engaged in conduct subject to penalty under 26 U.S.C. § 6701, and that injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent a recurrence of that conduct;

D.      That the Court find that the Defendants have engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

E.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter a permanent injunction prohibiting the Defendants from:

1.      Acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;

2.      Owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

3.      Maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

27

4. Engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code;

5. Training, advising, counselling, instructing, or teaching anyone about the preparation of federal tax returns;

6. Appearing as a representative on behalf of any person or entity before the IRS; and

7. Engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

F. The Court, pursuant to 26 U.S.C. § 7402, enter an injunction requiring the Defendants, at their own expense, to:

1. immediately and permanently close all tax return preparation operations that the Defendants own or operate through any entity;

2. within 30 days of the Court's order, produce to counsel for the United States a list that identifies by name, social security number, address, e-mail address, and telephone number and tax period(s) all persons for whom the Defendants prepared federal tax returns or claims for a refund at any time since January 1, 2013 and continuing through this litigation;

3. within 30 days of the Court's order, send by U.S. mail or email a copy of the final injunction entered against them in this action to each person for whom they prepared federal tax returns or any other federal tax forms since January 1, 2013; and

G. That the Court retain jurisdiction over the Defendants and over this action to enforce any permanent injunction entered against them;

H. That the United States be entitled to conduct discovery to monitor the Defendants compliance with the terms of any permanent injunction entered against them; and

I. That the Court grant the United States such other and further relief, including costs, as is just and reasonable.

//

//

28

17265927.1

Dated: January 17, 2019

JEFFREY B. JENSEN
United States Attorney

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Julian T. A. Lee*
JULIAN T. A. LEE
NY Bar Number: 4523684
JARED S. WIESNER
DC Bar Number:  976856
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 7238
Washington, D.C.  20044
202-307-6140 (o)
202-514-6770 (f)
Julian.Lee@usdoj.gov
*Attorneys for the United States*

29

17265927.1

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Mark Tony Baker, et al. |

**(b)** County of Residence of First Listed Plaintiff    n/a
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    St. Louis CIty
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Julian T. A. Lee; Jared S. Wiesner
Department of Justice Tax Division
PO Box 7238, Washington, DC 20044 (202.307.6140)

Attorneys *(If Known)*
n/a

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
         Plaintiff

☐ 2   U.S. Government
         Defendant

☐ 3   Federal Question
         *(U.S. Government Not a Party)*

☐ 4   Diversity
         *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☒ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
         Proceeding

☐ 2   Removed from
         State Court

☐ 3   Remanded from
         Appellate Court

☐ 4   Reinstated or
         Reopened

☐ 5   Transferred from
         Another District
         *(specify)*

☐ 6   Multidistrict
         Litigation -
         Transfer

☐ 8   Multidistrict
         Litigation -
         Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
26 USC 7402, 7407, and 7408

Brief description of cause:
Complaint to permanently enjoin tax preparers.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE
01/17/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/ Julian T. A. Lee

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____